[627 NYS2d 679]

ADELE CHERRY et al., Respondents, v JOSEPH S. HERBERT & COMPANY, Appellant.

First Department, June 13, 1995

### APPEARANCES OF COUNSEL

*Jack Babchik* of counsel, New York City *(Bergadano, Zichello & Babchick,* attorneys), for appellant.

No appearance for respondents.

### OPINION OF THE COURT

Ross, J.

This appeal involves an action for negligence and fraud commenced by the plaintiffs against the defendant accounting firm. The dispositive issue presented concerns whether the trial court should have granted renewal of defendant's previously denied motion to dismiss plaintiffs' complaint pursuant to CPLR 3211 (a) (7), based upon defendant's so-called "new discovery" in the action and in light of the Court of Appeals decision in *Security Pac. Bus. Credit v Peat Marwick Main & Co.* (79 NY2d 695). For the following reasons we hold that the defendant's motion for, *inter alia,* an order pursuant to CPLR 2221 was properly denied and affirm the order appealed from in all respects.

The individual plaintiffs are the principals of Cherry Enterprises, Inc. Cherry Enterprises, Inc. is the successor corporation, by change of name, to Protogs, Inc. a New York corporation (Protogs New York) engaged in the manufacture of knit products and retail sale of computers. Plaintiffs, in or about late 1984, agreed to sell the assets of Protogs New York to a Delaware corporation formed solely for the purpose of acquir-

ing those assets also named Protogs, Inc. (Protogs Delaware). The principals of Protogs Delaware were Charles Kalson and Alfred Fabricant. The purchase price agreed upon for the sale of the assets was $3,000,000.

Plaintiffs alleged that in order to successfully operate their business, a factoring relationship was maintained with Walter B. Heller, Inc. (Heller). It was also alleged that since the factoring relationship was essential to the day-to-day operation of Protogs New York it was necessary, as a condition for the sale to occur, that Protogs Delaware establish a similar factoring arrangement, at or immediately after the closing on the sale. It was alleged that without the factoring agreement Protogs Delaware could not operate as a going concern and would not be able to make the required payments and avoid default under the terms of the parties' Asset Purchase Agreement dated September 1, 1984. According to the plaintiffs, Heller agreed to act as factor for Protogs Delaware on condition that he was provided with a financial statement and certified public accountant's written opinion stating that Protogs Delaware was a solvent company.

Plaintiffs' two causes of action are based on the allegations that Protogs Delaware retained the defendant firm to prepare the financial statement and issue the appropriate letter; that the defendant firm prior to issuing the written financial documents participated in various meetings and conversations with the plaintiffs and Heller; that defendant, prior to the closing, with the knowledge that its certifications were to be relied upon by plaintiffs and Heller, gave verbal assurances both to the plaintiffs and Heller regarding the solvency of Protogs Delaware and thereafter issued a written opinion and financial documents attesting to same.

The complaint also alleges that based upon the defendant's certification and opinion that Protogs Delaware was solvent, Heller, in reliance thereon, entered into a factoring arrangement with Protogs Delaware. Thereafter, plaintiffs in reliance on defendant's certifications and the existence of the factoring arrangement, closed on the sale of assets to Protogs Delaware for the agreed-upon price of $3,000,000 on October 1, 1984. Pursuant to the Asset Purchase Agreement plaintiffs were to receive some $350,000 by the closing date with the balance of $2,650,000 to be paid in accordance with a loan and security agreement and notes. Plaintiffs received only $500,000 toward the purchase price and in August of 1986 Protogs Delaware filed for bankruptcy. Based upon the above allegations plain-

tiffs claimed that the defendant was negligent in its examination and audit of Protogs Delaware and that defendant falsely and fraudulently issued statements that Protogs Delaware was solvent.

By notice of motion dated November 20, 1990, defendant moved for summary judgment dismissing the complaint pursuant to CPLR 3211 (a) (7). By order entered July 28, 1991, the Supreme Court (Carmen Beauchamp Ciparick, J.) denied the defendant's motion insofar as it sought dismissal of the negligence cause of action, and granted the motion with respect to the fraud cause of action with leave granted to plaintiffs to file an amended complaint. In sustaining the negligence cause of action the trial court found that plaintiffs' allegations, together with the supporting affidavit submitted in support thereof, passed scrutiny pursuant to the criteria set forth in *Credit Alliance Corp. v Andersen & Co.* (65 NY2d 536) and alleged the requisite relationship and conduct to sufficiently set out a cause of action for negligence against the defendant. The second cause of action for fraud was dismissed on the ground that the allegations lacked the requisite specificity required by CPLR 3016.

The case of *Security Pac. Bus. Credit v Peat Marwick Main & Co. (supra)* was decided by the Court of Appeals on July 1, 1992 and on October 5, 1992 defendant received plaintiffs' replies to its revised interrogatories. On April 30, 1993, six months after receiving the answers to the revised interrogatories and over nine months after the decision in *Security Pac. (supra)*, defendant sought renewal of its prior motion to dismiss the complaint based on the so-called new information drawn from plaintiffs' interrogatory answers and the *Security Pac.* decision, which defendant argued represented a change in the law. While the defendant waited a substantial amount of time before moving for leave to renew, the trial court elected to resolve the matter on the merits and we do the same.

At the outset we find that *Security Pac. Bus. Credit v Peat Marwick Main & Co. (supra)* did not constitute a change in the principles set forth by the Court of Appeals in *Credit Alliance Corp. v Andersen & Co. (supra)* and the companion case of *European Am. Bank & Trust Co. v Strauhs & Kaye* (65 NY2d 536), originally relied upon by the trial court to deny defendant's motion to dismiss plaintiffs' negligence cause of action. In *Security Pac. (supra)*, the Court reviewed and reaffirmed the analytical framework, set out in *Credit Alliance*

*Corp. v Andersen & Co. (supra),* for determining the applicability of the rule, which provides that accountants may incur liability to injured third parties who rely on their work in the absence of direct contractual relationship between the accountants and said third parties. Therefore, to hold accountants liable to third parties it must still be shown that: "(1) the accountants must have been aware that the financial reports were to be used for the particular purpose or purposes; (2) in the furtherance of which a known party or parties was intended to rely; and (3) there must have been some conduct on the part of the accountants linking them to that party or parties, which evinces the accountants' understanding of that party or parties' reliance" *(Credit Alliance Corp. v Andersen & Co., supra,* at 551). Furthermore, it was reaffirmed in *Security Pac. (supra,* at 702-703), that the "indicia, while distinct, are interrelated and collectively require a third party claiming harm to demonstrate a relationship or bond with the once-removed accountants 'sufficiently approaching privity' based on 'some conduct on the part of the accountants [citations omitted]' ". *Security Pac.,* therefore, did not raise the level of the "relationship or bond" with once-removed accountants a plaintiff must demonstrate in order to set out a cause of action for negligence.

In *Credit Alliance Corp. v Andersen & Co. (supra),* the Court held that the defendant accounting firm was not liable to a noncontracting party plaintiff, which had loaned money to the defendant accounting firm's client in reliance on the defendant firm's erroneous audit report of the client's financial statements, which the client had given to the plaintiff Credit Alliance Corp.

The emphasis in the *Credit Alliance* case was on the fact that the accounting firm Andersen & Co. had not been retained by its client for the particular purpose of inducing Credit Alliance Corp. into extending credit to the client, and on the fact that there had been no direct dealings between Andersen & Co. and Credit Alliance. The Court stated that "there [was] simply no allegation of any word or action on the part of Andersen directed to plaintiffs, or anything contained in Andersen's retainer agreement with Smith [its client] which provided the necessary link between them" *(Credit Alliance Corp. v Andersen & Co., supra,* at 553-554). By contrast, in *European Am. Bank & Trust Co. v Strauhs & Kaye* (65 NY2d 536, *supra)* decided with *Credit Alliance (supra),* it was found that the allegations in the complaint and support-

ing affidavit "posit a direct nexus between the parties" *(supra,* at 545).

In *Security Pac.,* rather than change the principles set out in *Credit Alliance Corp. v Andersen & Co.,* the Court applied those principles to conclude that the plaintiff in opposing defendant Peat Marwick's motion for summary judgment pursuant to CPLR 3212, sought to establish the indispensable linking conduct by primarily relying on a single telephone call allegedly placed by the plaintiff's vice-president to an audit partner at Main Hurdman, the predecessor firm to Peat Marwick Main & Co. The Court in *Security Pac.* specifically contrasted the plaintiff's offer of proof therein with the fact pattern of *European Am. Bank & Trust Co. v Strauhs & Kaye (supra),* where there were multiple direct and substantive communications and personal meetings with the relying lender.

The present case comes to this Court in the procedural context of a denial of a motion to renew the trial court's denial of defendant's CPLR 3211 (a) (7) motion. The inquiry on the initial motion to dismiss, therefore, was limited to whether the plaintiffs' complaint stated cognizable causes of action with the allegations in plaintiffs' complaint and statements in the affidavits relied upon to sustain those allegations deemed to be true *(Rovello v Orofino Realty Co.,* 40 NY2d 633; *Becker v Schwartz,* 46 NY2d 401). The trial court correctly found the allegations, as supported, sufficiently allege the requisite nexus between the parties as it was alleged that there were personal meetings between the parties, prior to the closing date, at which defendant's personnel were aware of the purpose of their certification of Protogs Delaware's solvency, and personally communicated those assurances directly to the plaintiffs. Since *Security Pac. (supra)* did not constitute a change in the law, that ground for renewal must fail.

Defendant's so-called newly discovered evidence was also properly rejected as a ground for renewal by the trial court. Defendant relies principally upon the plaintiffs' acknowledgement in response to an interrogatory that they did not receive the so-called solvency letter dated October 9, 1984 (eight days after the closing) until the end of 1986, to argue that their certification could not have been relied upon by any of the parties at the closing. This argument does not account for the statements in the record before the trial court, in deposition and affidavit form, which attested to the oral assurances and defendant's conduct assuring plaintiffs and Heller of Protogs

Delaware's solvency prior to the closing. Moreover, in this procedural context, the plaintiffs' acknowledgement regarding their receipt of the letter does not undermine their negligence cause of action. Even if this matter involved a motion for summary judgment pursuant to CPLR 3212, which it does not, this evidence would at best only raise a triable issue when evaluated along with the affidavit submitted by plaintiffs in opposition to defendant's motion to dismiss.

■ Finally, it is clear that the trial court properly exercised its discretion in denying the portion of defendant's motion seeking dismissal of the complaint pursuant to CPLR 3126. The nature and degree of penalty, if any, to be imposed by a court pursuant to CPLR 3126 is a matter lying squarely within the discretion of the trial court (Associated Mut. Ins. Co. v Dyland Tavern, 105 AD2d 892, 893). Moreover, the court found that both parties apparently failed to comply with a court-ordered stipulation.

Accordingly, the order of Supreme Court, New York County (Carmen Beauchamp Ciparick, J.), entered August 6, 1993, which denied the defendant's motion pursuant to CPLR 2221 and 3126, is unanimously affirmed, without costs.

ELLERIN, J. P., WALLACH, KUPFERMAN and MAZZARELLI, JJ., concur.

Order, Supreme Court, New York County, entered August 6, 1993, affirmed, without costs.